If it pleases the court, my name is Michael Bigelow and I represent appellant Jessica Holmes. First and foremost, this claim is about trial counsel's failure to properly advise the appellant to take a plea or to reject it. He told her to reject it. He told her that life is life. It's not going to make any difference. What is interesting is that no lawyer in his right mind, no lawyer, no criminal defense lawyer in his right mind is going to recommend that a client reject a plea offer, regardless of how bad it is, but to reject a plea offer, something that is going to be less based on the facts of this I've got about the most expensive bionics known to man and I've got fresh batteries. Could I ask you to sort of lean into the microphone? I really, really apologize. This is a first. Yes, I'll be happy to do that. Can you hear me? Great. Let's go. Here's the question. Your argument is twofold, it seems to me, and I have a hard time in the briefing parsing out two different arguments that I think are subsumed. One focuses on the advice given to reject the plea offer and whether that was competent advice, weighing basically the pros and cons, but subsumed within that argument is the notion that the client was told, incorrectly told, what her choices were. Which are you arguing? What? What her what was? What her choices were. No. No. That's the problem with this. The state court and the district court all said, these are your choices. These are the choices that were given to you. You have a choice to plead guilty or not plead guilty. If you don't plead guilty, or if you do plead guilty, if you don't plead guilty, rather, you're going to go to prison for the rest of your life without possibility of parole. That's the state's claim. That's not what we claimed. That's not the argument. The argument is it's got nothing to do with knowledge and intent. This case has nothing to do with knowledge and intent. That's not the argument. Whether she knew that it was life in prison without possibility of parole is absolutely irrelevant to the claim. The claim is she was I can't make that any clearer. That is what she said in her petition. But what she said in her petition, her pro se petition, is that nobody ever told her that if she was convicted, it would actually be mandatory life without the possibility of parole. Well, you know, that's not what she said. That isn't what she said. She said, if I had known, if I had had more information, I would have been able to make a better decision. That's not what she said. She says very clearly that until the day of sentencing, she didn't understand that the life without possibility of parole would actually be mandatory. That's correct. That is correct. That's a big, there's a big difference between that and what she states she understood. If you want to go into that area, if you want to go to that focus, there's a big difference between mandatory, which she learned for the first time, but she never says in her claim that that is what she is basing her claim on. Her claim is based on the fact the trial counsel said, go to trial. Life is life. I understood your client's claim to be that her lawyer misadvised her about what the trial was. Hang on, hang on, hang on. Can you hold on? Let me just try to state what I understand your client's claim to be, and then you can tell me if I'm wrong. Okay. I understood her to say that, look, I got this 16 to life offer, which now in retrospect looks pretty good, but my trial counsel told me, don't take it because you're going to get the same sentence whether you go to trial or whether you take the plea. You're going to get life either way, and you might as well roll the dice, right? That is correct. That's the language that is in the claim. There is nothing, there is nothing in the claim that says, there's nothing in the claim that says mandatory life without possibility of parole. Right, right, right, but I'm trying to help, I'm trying to help you give us an understanding of the nature of the claim. I thought that was the whole crux of it, is that she said, my lawyer never told me that the consequences of going to trial and losing were way worse than the plea that was on the table, and if I had known how bad the consequences were of going to trial and losing, I would have taken the deal. No, no, no. I don't see that, I don't see that anywhere in the language of her pro se claim. That's the interpretation the state puts on it, and the state puts, and the state ignores, the state ignores, the superior court and the state now, and the district court, all take that same position, but I challenge you to find, that's an interpretation of her language that is not there. I'm looking right at it and that's exactly what it says, but you tell me what you think it says then. It says, my trial lawyer said, go to trial, you're going to win. That's as plausible an interpretation as any that this court or the state court, this court presently, at least, state court puts on it, or the district court puts on it. Go to trial, you're going to win, and oh yeah, by the way, if you don't win, life is life. You're going to get life. Right, so you might as well roll the dice. That's what I mean. But a life sentence is life with possibility of parole is a big difference from life without possibility of parole. Yes, counsel, that's the point. That's the point. I think Judge Rothstein is trying to ask a question. I'm going to try to shift the focus here a little, because it seems like we're, can you hear me? I can. Okay. I'm just going to try to shift the focus here a little. How do you deal with the problem that she failed to file a declaration? That seemed to make a difference to the trial court. What do you say about that? You mean in the superior court? Well, her pro se petition is adequate. It seems to me it's under oath. She says, my trial counsel told me to reject the plea. So you feel that the petition itself is a good substitution for the declaration? Yes. Okay. That's my understanding of the law under the circumstances. That her petition is verified, it's under oath, or it's maybe not under oath, but it's verified, assigned under penalty of perjury. Counsel, would you like to reserve some time for rebuttal? No. All right. Do you have any additional questions? We do not. I don't. Let's go ahead and clarify it, Your Honor. I understand. Look, I'm looking at the petition. I know what it says, but I have a different question, which is... Go ahead if you want to use it. Go ahead. I don't know, and this court doesn't know, and no one actually knows at this point whether... But it doesn't make any difference. It doesn't make any difference whether trial counsel said, look, you're going to get life without possibility of parole. We don't know that is the information actually given to the appellant. We don't know. But let's assume for the moment that he did. Let's assume for the moment that he did. Go ahead. I'm not... Actually, none of my questions have been hostile to you. I actually think the claim that I framed is a good claim, but... So let me ask you this. It just doesn't matter. What matters is that he said on the strength of this case, you're going to win. Okay. Let me ask you a question about your reliance on Hurls versus Ryan. Yes. It's one of the cases you cited. You gave the wrong cite, but you did cite the case nonetheless. It would support the proposition perhaps that your client should at least get an evidentiary hearing on this claim, and I'm going to ask the state to respond to that. But let's hear your argument for that. I'm sorry. Your voice dropped. I apologize. I'm usually pretty good at hearing you. We've done this... The acoustics are bad in here, so don't worry. Hurls versus Ryan. What? Hurls versus Ryan. Yes. That case. You remember that case? Actually, I don't, but that's all right. Then let me not bother asking you. Thank you, counsel. Thank you. May it please the court, Stephanie Mitchell on behalf of Respondent Warden. So now we can't hear you. I apologize. Can you hear me? It's pretty tough. It's just a really big echoey room, so please do your best. Okay, I will. That's better. Is that better? Much better. Okay. The claim that appellant raised in the state court centered around the sentence that she would receive. The claim that appellant raises on appeal centers around the defense he would present. They are totally different claims, and the claim that he does present now is unexhausted. The claim that this court has discussed, because it is not fairly presented, he is not entitled to relief on that in this court. Well, she's most certainly presented the claim that she got bad advice about the consequences of going to trial, right? She says, as Judge Christin mentioned very clearly, that she never understood at all up until the moment she was sentenced that life without the possibility of parole was going to be the mandatory consequence of going to trial and losing. So I was trying to frame the claim as I understood it in a way that I thought was helpful to your opponent, and it seems to me that's quite a viable claim. The lawyer said, don't take the plea, which now in retrospect looks quite attractive, because it doesn't matter. You're going to get the same sentence whether you go to trial and lose or whether you take the plea, so you might as well roll the dice. That turned out to be, I think even you would agree, if that's the advice she was given, totally deficient, because in fact the consequence of going to trial and losing was way more severe than the plea that was on the table, right? That is true. Okay. So that's the claim that she presented. That claim has been exhausted. Yes. And I guess I'd like just to have you focus on that claim, because it seems to me it's quite a viable claim. On that claim, one of the first things I want to point out is that she did not say in the trial court that she would have accepted the plea had she known that it would have been a mandatory sentence. She didn't use those exact words. She didn't say, I would have accepted that plea. But looking at what she did say, can't you reasonably conclude, and looking at the results and what happened? Well, what she did say, and I hope I'm quoting this correctly, is if she had known about the mandatory sentence, she would have been able to properly decide on either to take the plea or been able better to make decisions regarding trial. She also says that she was considering taking it but didn't on her lawyer's advice. This is true. And she says very clearly that she did not understand that was a mandatory consequence, so she didn't understand what her choices were. She did say that, and the state court reasonably found that that was unbelievable, given the facts that, given the fact that this, he, they had on the record, the prosecutor discussed the plea that had been offered. Never said mandatory. Right, you said you faced the risk of life without parole. That's all the prosecution ever said on the record. And that's the only thing that you're able to point to in terms of the so-called facts that she was aware of, is just that one statement at that hearing? Actually, I should let you answer Judge Watford's question. Is there anything else other than that? Well, what we would argue is, in addition to that, when they ask her, when the prosecutor puts on that you run the risk of life without parole, the court then asked trial counsel if he had the opportunity to fully discuss the offer with his client, and he said he did. Of course, we're back to the statements by counsel that we, the very counsel we're trying to assess, did this properly or not. Right, so if she's truthful, we don't even know if counsel understood the offer correctly, what the choices were. We don't know what he told her, because from what was said on record, in court, we have that transcript. And that's entirely consistent with this advice she thought she received, which is, life is life, as in, it doesn't matter. You're getting the same offer either way. I believe that the state court could reasonably find that an experienced attorney, such as the trial counsel, understood the mandatory sentence and advised his client properly of that sentence. Well, let's go halfway there. I agree with you that an experienced criminal defense attorney surely would know the difference between a mandatory sentence and a non-mandatory sentence. That I agree with you on. Whether or not he went the additional step to make a client who clearly . . . She's 18 years old. She's clearly, from reading the transcript, you can tell she's totally unsophisticated about dealing in this criminal justice system. Whether he made that clear to her, how do you make that assumption? Based on the transcripts we have, where nobody, the trial judge, at the hearing, nobody used the word mandatory. Well, that would appear to be a deficiency on the appellant's part of not providing a better record of what happened and getting something from trial counsel indicating what he actually did advise his client. Can I ask you about Hurls? Because you know about Hurls. I know you guys don't like that case. But why . . . Am I wrong if I were to read that case and think that because the state court here denied Ms. Holmes' request for an evidentiary hearing. Right? So we don't have any more fully developed record than that one little snippet from the transcript. We don't have anything, obviously, from defense counsel. Doesn't Hurls say that the district court here has to grant an evidentiary hearing at least on her claim? Unfortunately, like my opposing counsel, I'm not as conversant on Hurls as I would hope to be. And I apologize for that. If you would like us to further brief on the evidentiary hearing issue, I'd be happy to do that. I don't believe that a hearing is necessary in this case. Okay. Is there anything further? I have no, nothing further. No. Thank you, counsel. I think the time has expired. So we'll thank you both for your argument. Thank you.
judges: Christen, Watford, Rothstein